# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| **JOSE GONZALEZ, et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **No. 06 C 5321** |
| | ) | |
| **CITY OF ELGIN, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Defendants' motion for summary judgment.

For the reasons stated below, we grant the motion in its entirety.

## BACKGROUND

Plaintiffs allege that on October 2, 2005, they were at Plaintiff Antonio

Franco's mother's home in Elgin, Illinois, when a friend arrived and told them that

his friend's wife was being beaten by a gang member at a nearby restaurant

("Restaurant"). Plaintiffs allegedly went to the Restaurant and found their friend's

wife injured and covered in blood. Plaintiffs contend that Defendant Officer Miguel

Pantoja ("Officer Pantoja"), Defendant Officer Shaun Schroeder ("Officer

Schroeder"), and Defendant Officer Todd Pavoris ("Officer Pavoris") then arrived at the scene in squad cars and attacked Plaintiff Jose Gonzalez. The other Plaintiffs were also allegedly beaten and harassed by police officers that arrived at the scene. According to Plaintiffs, they were then arrested and taunted while in custody. Plaintiffs claim that they were charged with resisting arrest, mob action, and disorderly conduct, and that the charges were either dismissed or nolle prossed, except for Jose Gonzalez, who pled guilty of disorderly conduct.

Plaintiffs brought the instant action and include in their second amended complaint claims alleging violations of 42 U.S.C. § 1983 ("Section 1983"), based on false arrest and unlawful detention theories (Count I), Section 1983 excessive force claims (Count II), Section 1983 equal protection claims (Count III), Section 1983 failure to intervene claims (Count IV), state law malicious prosecution claims (Count V), a state law *respondeat superior* claim (Count VI), and state law indemnification claims (Count VII). Defendants moved to dismiss Counts V, VI, and VII of the second amended complaint. On November 28, 2007, we granted Defendants' motion to dismiss the indemnification claims (Count VII). We denied Defendants' motion to dismiss the malicious prosecution claims (Count V) and denied the motion to dismiss the *repondeat superior* claim (Count VI). Defendants now move for summary judgment on the remaining claims.

# LEGAL STANDARD

Summary judgment is appropriate when the record, viewed in the light most favorable to the non-moving party, reveals that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In seeking a grant of summary judgment, the moving party must identify "those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)(quoting Fed. R. Civ. P. 56(c)). This initial burden may be satisfied by presenting specific evidence on a particular issue or by pointing out "an absence of evidence to support the non-moving party's case." *Id.* at 325. Once the movant has met this burden, the non-moving party cannot simply rest on the allegations in the pleadings, but, "by affidavits or as otherwise provided for in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). A "genuine issue" in the context of a motion for summary judgment is not simply a "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, a genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

248 (1986); *Insolia v. Philip Morris, Inc.*, 216 F.3d 596, 599 (7th Cir. 2000). The court must consider the record as a whole, in a light most favorable to the non-moving party, and draw all reasonable inferences that favor the non-moving party. *Anderson*, 477 U.S. at 255; *Bay v. Cassens Transport Co.*, 212 F.3d 969, 972 (7th Cir. 2000).

**DISCUSSION**

I.  Withdrawn Claims

Plaintiffs indicate in their answer to Defendants' motion for summary judgment that they have withdrawn certain claims. Plaintiffs indicate that they are no longer pursuing a *Monell* claim against Defendant City of Elgin and are withdrawing that claim. (Ans. 6 n.2). Plaintiffs also indicate that they are not going to pursue their excessive force claims against Defendant Sergeant James Kelly. (Ans. 6 n.2). In addition, Plaintiffs that had their mob action claims dismissed in February 2006 have decided to withdraw their malicious prosecution claims as to the mob action charges. (Ans. 6 n.2). Plaintiffs are not withdrawing their malicious prosecution claims on other charges and Antonio Franco is not withdrawing any of his malicious prosecution claims. (Ans. 6 n.2).

## II.  False Arrest Claims (Count I)

Defendants argue that the evidence clearly shows that they had probable cause to arrest Plaintiffs.  Defendants contend that Plaintiffs were arrested for either mob action, resisting arrest, obstructing an arrest, or battery.  For a Section 1983 false arrest claim "[p]robable cause is an absolute defense. . . ."  *Chelios v. Heavener*, 2008 WL746842 (7th Cir. 2008).  An officer is deemed to have probable cause for an arrest "'if, at the time of the arrest, the []facts and circumstances within the officer's knowledge . . . are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.[]'" *Id.* (quoting *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979)); *see also Holmes v. Village of Hoffman Estate*, 511 F.3d 673, 679 (7th Cir. 2007)(stating that "[a] police officer has probable cause to arrest an individual when the facts and circumstances that are known to him reasonably support a belief that the individual has committed, is committing, or is about to be commit a crime").  A court determining whether, in retrospect, an officer had probable cause "steps into the shoes of a reasonable person in the position of the officer."  2008 WL 746842; *Holmes*, 511 F.3d at 679 (stating that "[i]n making that assessment, the court must consider the facts as they reasonably appeared to the arresting officer, seeing what he saw, hearing what he heard, and so forth").

## A.  Mob Action Charges

Plaintiffs contend that Defendant Officers improperly charged Plaintiffs with mob action.  Plaintiffs point out that a portion of the mob action statute has been found unconstitutional in *Landry v. Daley*, 280 F. Supp. 938, 946 (N.D. Ill. 1968). (Ans. 8).  However, only 720 ILCS 5/25-1(a)(2) ("Section 5/25-1(a)(2)"), which prohibits "'[t]he assembly of 2 or more persons to do an unlawful act,'" has been found unconstitutional due to vagueness.  280 F. Supp. at 946 (quoting 720 ILCS 5/25-2(a)).  Although Plaintiffs were charged with violating Section 5/25-1(a)(2), as will be explained below, Defendant Officers also had a basis to charge Plaintiffs for violating 720 ILCS 5/25-1(a)(1) of the mob action statute, which prohibits "[t]he use of force or violence disturbing the public peace by 2 or more persons acting together and without authority of law. . . ."  720 ILCS 5/25-1(a).  In addition, the mob action charge for Antonio Franco was ultimately amended to charge him with a violation of 720 ILCS 5/25-1(a).

## B.  Officers Arrival at Scene

Defendants contend that when Officer Pantoja and Officer Schroeder arrived at the scene, there was a chaotic group of people arguing in front of the Restaurant. Plaintiffs admit that in the early morning hours of October 2, 2005, they were at a

house together.  (R SF Par. 19).  Plaintiffs admit that all of them except for Luis

Franco had come from a wedding.  (R SF Par. 20).  Some of Plaintiffs' friends left

the house and went to the Restaurant.  (R SF Par. 22).  Plaintiffs admit that there was

an argument that occurred at the Restaurant between Plaintiffs' friends and another

group of people and that the argument "continued to be heated."  (R SF Par. 24, 27).

It is also undisputed that the two groups were told to leave the Restaurant and a

physical altercation began between the two groups in the parking lot of the

Restaurant.  (R SF Par. 28).  Plaintiffs admit that they then ran to the Restaurant to

help their friends.  (R SF Par. 29-30).  It is also undisputed that Officer Pantoja and

Officer Schroder were conducting a traffic stop when they saw Plaintiffs running to

the Restaurant and that the officers then followed Plaintiffs to the Restaurant.  (R SF

Par. 31).

Defendants contend that some of the crowd appeared to be intoxicated and

agitated.  (SF Par. 32).  Plaintiffs deny that the crowd was agitated.  (R SF Par. 32).

However, Plaintiffs fail to cite to sufficient evidence that would indicate that the

crowd was not agitated.  The contention that Plaintiffs and the crowd in front of the

Restaurant were not agitated is in fact contrary to Plaintiffs' own acknowledgment

that there was a physical altercation occurring between two groups of people in the

parking lot and that the Plaintiffs were running to intervene to help their friends.  The

notion that the crowd was not agitated is also contrary to Plaintiffs' own testimony about the events occurring in front of the Restaurant. For example, Luis Franco testified that he had blood on his shirt after hugging a woman that was crying and "full of blood." (Luis Dep. 38-40). Luis Franco also testified that he saw another friend that had been hit in the face and looked scared. (Luis Dep. 38).

Plaintiffs also deny that some of the people in the crowd smelled of alcohol. (R SF Par. 32). However, Plaintiffs have not pointed to evidence that would indicate that none of the people in the crowd smelled of alcohol. In fact, there is ample evidence that shows that some of the Plaintiffs consumed alcohol prior to running to the Restaurant. For example, Plaintiffs acknowledge that "a few of them had a few beers earlier in the evening." (R SF Par. 32). Plaintiffs also admit, for example that Luis Franco consumed alcohol at around 3:00 a.m. on October 2, 2005. (R SF Par. 21). Plaintiffs also acknowledge that Jose Gonzalez, Julio Gonzalez, and Antonio Franco, were drinking at the wedding that they attended before arriving at the Restaurant. (R SF Par. 20). Thus, there is ample evidence, based on Plaintiffs' own admissions that Plaintiffs had been consuming alcohol prior to arriving at the Restaurant and, thus, Officers Pantoja and Schroder could have smelled alcohol when arriving at the scene at the Restaurant. Plaintiffs also acknowledge that Officers Pantoja and Schroder were outnumbered by the group of civilians in front of

the Restaurant. (R SF Par. 51). Thus, it is undisputed that Officers Pantoja and Schroder arrived at a chaotic scene involving a fight between two groups of people with others running to intervene in the fray. The Officers claim to have smelled alcohol on members of the crowd and the Officers were outnumbered by the crowd.

### C.  Request that Crowd Disperse

Defendants contend that Officers Pantoja and Schroder told the crowd to leave the scene. Plaintiffs deny that the Officers told "all" the people to leave. (SF Par. 35). However, Plaintiffs do not contest the fact that the officers made statements to the crowd in general rather than speaking to each individual separately and asking him or her to leave.  The depositions of Plaintiffs themselves corroborate the fact that the Officers told the people in the crowd to leave. For example, Maribel Gonzalez acknowledged at her deposition that the officers told the crowd to leave. (Mar. Dep. 45-47). Jose Gonzalez and Luis Franco also admitted at their depositions that the Officers asked the group to leave. (Jose Dep. 35-36); (Luis Dep. 46).

Defendants also contend that the people in front of the Restaurant, including Plaintiffs, refused to leave when initially asked to do so. Plaintiffs deny that they refused to leave. However, Plaintiffs' own deposition testimony indicates otherwise. For example, Jose Gonzalez and Luis Franco acknowledged at their depositions that

the Officers had to ask twice for the crowd to leave. (Jose Dep. 37); (Luis Dep. 46-48). If, as Plaintiffs contend, they did not refuse to leave after the first request, Plaintiffs fail to point to any evidence that could reasonably explain why the officers needed to ask Plaintiffs to leave twice.

### D. Jose Gonzalez

Defendants claim that Officer Pantoja observed Jose Gonzalez at the scene and he appeared to be upset, agitated and he smelled of alcohol. Plaintiffs deny that Jose Gonzalez was upset or agitated. (R SF Par. 41). Such an assertion, however, is contrary to Plaintiffs' acknowledgment that Jose Gonzalez had just run to help friends caught in a fight in front of the Restaurant. As Plaintiffs allege in their complaint, they found their friend's wife injured and covered in blood, which supports Officer Pantoja's assertion that Jose Gonzalez appeared upset.

Plaintiffs also deny that Jose Gonzalez smelled of alcohol. (R SF Par. 41). However, Jose Gonzalez admitted that he had a "few beers" at the wedding he attended before he arrived at the scene in front of the Restaurant. (Jose Dep. 20). Plaintiffs have not pointed to any evidence that negates or even draws into question Officer Pantoja's assertion that he smelled alcohol on the person of Jose Gonzalez. Officer Pantoja also contends that Jose Gonzalez poked Officer Pantoja in the chest.

Plaintiffs deny this fact, but fail to provide support for the denial. Plaintiffs cite to page 109 of the deposition transcript of Maribel Gonzalez. (R SF Par. 42). However, Plaintiffs have not provided as an exhibit that page of her deposition transcript. Thus, the undisputed facts establish that the Officers were presented with Jose Gonzalez, who had been drinking earlier in the evening and had just run to the scene to intervene in a fight and had refused to leave the scene when asked by the Officers. The Officers, when faced with the chaotic scene in front of the Restaurant involving two groups, a fight, and then a refusal by the parties to leave, could reasonably have concluded that the parties were involved in a mob action. Defendants have also produced evidence that shows that Jose Gonzalez pled guilty to the charge of disorderly conduct arising from his conduct on October 2, 2005. (Mem. SJ 7). Based on the undisputed evidence, there are sufficient facts to indicate that the Officers had probable cause to arrest Jose Gonzalez for mob action. There is also ample undisputed evidence that shows that the Officers could have arrested Jose Gonzalez for resisting arrest. Therefore, we grant Defendants' motion for summary judgment on the false arrest claims brought by Jose Gonzalez.

E.  Maribel Gonzalez

Defendants contend that Maribel Gonzalez took part in the mob action and

attempted to interfere with the arrest of Jose Gonzalez. Plaintiffs deny that Maribel

Gonzalez interfered with the arrest. (R SF Par. 43). However, Maribel Gonzalez

testified at her deposition that when the Officers were taking away Jose Gonzalez to

the police van she approached the officers from behind and began asking where they

were going to take Jose. (Mar. Dep 85-87). Reasonable officers in the midst of the

chaotic scene in front of the Restaurant, that are outnumbered by the crowd would

feel that their safety was at risk if approached from behind by a bystander while the

officers were in the process of arresting an individual. Thus, the Officers reasonably

acted based on the circumstances of the moment and took steps to minimize any

threat that Maribel Gonzalez presented. Plaintiffs have also not presented any

reasonable justification for Maribel Gonzalez to approach the Officers from behind

while they were trying to secure Jose Gonzalez and interject herself into the arrest

process. Maribel Gonzalez, along with the other Plaintiffs, also refused to leave the

scene after being initially told to do so. (Jose Dep. 37); (Luis Dep. 46-48). Thus, the

Officers had probable cause to arrest Maribel Gonzalez for mob action and

obstructing an arrest. Therefore, we grant Defendants' motion for summary

judgment on the false arrest claims brought by Maribel Gonzalez.


    F.  Antonio Franco

Defendants contend that Antonio Franco interfered with the arrest of Jose Gonzalez. Plaintiffs deny that Antonio Franco did so. (R SF Par. 74-75). However, Antonio Franco testified at his deposition that he also approached the officers that were arresting Jose Gonzalez from behind them. (Antonio Dep. 77). As with Maribel Gonzalez, the officers in the situation could have felt that their safety was at risk and concluded that Antonio Franco was attempting to interfere with the arrest or prevent them from arresting Jose Gonzalez. Plaintiffs have also not presented any reasonable justification for Antonio Franco to approach the officers from behind while they were trying to secure Jose Gonzalez and interject himself into the arrest process. Thus, the Officers had probable cause to arrest Antonio Franco for mob action and obstructing an arrest. Therefore, we grant Defendants' motion for summary judgment on the false arrest claims brought by Antonio Franco.

### G. Maria Gonzalez

Defendants contend that Maria Gonzalez attempted to interfere in the arrest of Jose Gonzalez. Plaintiffs deny that Maria Gonzalez interfered in the arrest. (R SF Par. 74). However, Maria Gonzalez admits that she approached the Officers while they were arresting Jose. (Maria Dep. 63). She does not remember if the Officers said anything to her as she approached them. (Maria Dep. 64). For the reasons

explained above, the approach of Maria Gonzalez under the circumstances could have caused the Officers to fear for their safety and conclude that she was attempting to interfere with the arrest of Jose Gonzalez. Plaintiffs have also not presented any reasonable justification for Maria Gonzalez to approach the officers while they were arresting Jose Gonzalez and interject herself into the arrest process. Thus, the Officers had probable cause to arrest Maria Gonzalez for mob action and obstructing an arrest. Therefore, we grant Defendants' motion for summary judgment on the false arrest claims brought by Maria Gonzalez.

### H. Luis Franco

Defendants contend that Officer Doug Neff ("Officer Neff") came across Luis Franco at the scene and observed that Luis Franco was wearing a soccer jersey covered in blood and was holding an Elgin Police Department hat. Plaintiffs deny that these facts are accurate. (R SF Par. 109-110). However, Plaintiffs admit that Luis Franco had blood on his shirt. (R SF Par. 109). Plaintiffs contend that the blood was from a woman that had been injured in the fight, but that fact does not negate the fact that Officer Neff observed Luis Franco with a bloody shirt. Luis Franco also acknowledges that when Officer Neff subdued Luis Franco, Luis Franco could not explain how the police hat wound up right next to him. (Luis Dep. 74). A

reasonable officer in Officer Neff's position could have concluded that an individual covered in blood and in close proximity to another officer's hat could have been involved in unlawful conduct, including attacking another officer. Officer Neff thus had probable cause to arrest Luis Franco for mob action and battery. Therefore, we grant Defendants' motion for summary judgment on the false arrest claims brought by Luis Franco.

### I.  Julio Gonzalez

Defendants contend that Julio Gonzalez attempted to interfere in the arrest of Antonio Franco. Plaintiffs deny that Julio Gonzalez did anything wrong. (R SF Par. 126). However, Julio Gonzalez testified that he approached the Officers while they were attempting to arrest Antonio Franco. (Julio Dep. 81-82). Julio Gonzalez also testified that he had his hands in his pockets. (Julio Dep. 82). Reasonable officers could have concluded that Julio's approach at that juncture represented a threat to their safety and that Julio was concealing a weapon in his pocket. Julio also testified that he came "within arm's reach" of the Officers. (Julio Dep. 83). Plaintiffs have not provided any lawful justification for Julio Gonzalez to come in such close proximity to officers attempting to arrest another individual. Thus, the Officers had probable cause to arrest Julio Gonzalez for mob action and obstructing an arrest.

Therefore, we grant Defendants' motion for summary judgment on the false arrest claims brought by Julio Gonzalez.  In concluding above that Defendant Officers had probable cause to arrest Plaintiffs, we emphasize that our conclusion is based upon the need to consider the situation from the viewpoint of a reasonable officer in the position of Defendant Officers.  *See Holmes*, 511 F.3d at 679 (stating that "[i]n making that assessment, the court must consider the facts as they reasonably appeared to the arresting officer, seeing what he saw, hearing what he heard, and so forth").  There is no evidence that the Officers arrested any bystanders during the mob scene.  The only individuals the Officers arrested were ones that gave the Officers probable cause to arrest them.

### III.  Excessive Force and Failure to Intervene Claims (Count II and IV)

Defendants contend that there is not sufficient evidence that shows that Defendant Officers used excessive force in arresting Plaintiffs or that any Officers failed to intervene.  Plaintiffs claim that during the arrests on October 2, 2005, Defendant Officers used physical force against Plaintiffs and used pepper spray on Plaintiffs.  An officer is deemed to use excessive force in violation of the Fourth Amendment "if, in light of the totality of the circumstances, it was greater than was reasonably necessary to effectuate the seizure." *Holmes*, 511 F.3d at 685.  In

determining whether force was excessive, a court should consider "the severity of the crime for which the plaintiff was being detained or arrested, whether he posed a threat to the safety of the officers or to other persons, and whether the plaintiff was resisting the officers and/or attempting to flee." *Id.* An excessive force determination must also take into consideration "the facts as they would have appeared to a reasonable officer on the scene, . . . keeping in mind that an officer often must make a split-second judgment based on rapidly evolving circumstances . . . ." *Id.*

In the instant action, as is explained above, Defendant Officers had probable cause to arrest Plaintiffs. Also, as explained above, the undisputed facts show that Defendant Officers arrived during a mob scene and in the aftermath of a fight between two groups of people. There was at least one alleged victim of the mob action present who was bleeding and crying. The crowd also refused Defendant Officers' first order to disperse. Defendant Officers were outnumbered by the crowd. Also, once Defendant Officers attempted to arrest Jose Gonzalez, other Plaintiffs interjected themselves into the arrest process, some of them approaching the Officers from behind and some Plaintiffs appeared to be intoxicated. Other Plaintiffs such as Julio Gonzalez attempted to interfere in other arrests while approaching with his hands in his pockets. In addition, when Defendant Officers

tried to arrest some of Plaintiffs they resisted arrest. The undisputed facts clearly show that Defendant Officers used appropriate amounts of force in light of the totality of the circumstances including the split second decisions that Defendant Officers had to make in dealing with the agitated crowd that they were faced with at the scene. The undisputed facts show that Defendant Officers had reason to fear for their safety and the safety of other bystanders in the chaotic situation on October 2, 2005. If the Officers did not act as they did in the interest of public safety and order, the mob action could have resulted in untold injuries. Therefore, we grant Defendants' motion for summary judgment on the excessive force claims (Count II). In addition, since there is insufficient evidence that Defendant Officers used excessive force, there is no basis for Plaintiffs' failure to intervene claims and we grant Defendants' motion for summary judgment on the failure to intervene claims (Count IV).

IV. Equal Protection Claims (Count III)

Defendants contend that there is insufficient evidence to support an equal protection claim. The Equal Protection Clause of the Fourteenth Amendment prohibits denying a person equal protection under the laws, "which essentially is a direction that all persons similarly situated should be treated alike. . . ." *Vision*

*Church v. Village of Long Grove*, 468 F.3d 975, 1000 (7th Cir. 2006). For an equal

protection claim, based upon an allegedly unlawful arrest, the plaintiff must "show

that the police failed to bring charges against . . . lawbreakers [outside the protected

class] who were similarly situated to him in all relevant respects." *Sides v. City of

Champaign*, 496 F.3d 820, 827 (7th Cir. 2007). In the instant action, Plaintiffs

contend that they were allegedly mistreated and arrested because of their "race and/or

ethnicity, Latino." (SA Compl. Par. 26). However, there is not sufficient evidence

in the record to support such a theory. Plaintiffs point to nothing more than a few

alleged isolated comments during the series of events on October 2, 2005. It is

nothing but speculation on the part of Plaintiffs that Defendant Officers acted against

Plaintiffs because they are Latino. *See Salas v. Wisconsin Dept. of Corrections*, 493

F.3d 913, 926 (7th Cir. 2007)(stating that Section "'1983, like disparate treatment

cases under Title VII, require[s] ultimately proof of discriminatory intent'")(quoting

*Williams v. Seniff*, 342 F.3d 774, 788 (7th Cir. 2003)). Plaintiffs have also failed to

point to sufficient evidence that similarly situated non-Latino individuals were not

arrested and charged by Defendants. Therefore, we grant Defendants' motion for

summary judgment on the equal protection claims (Count III).


V.   Malicious Prosecution and Respondeat Superior Claims (Counts V and VI)

Defendants contend that there is insufficient evidence to support a malicious prosecution claim. If an officer had probable cause to arrest a party, the "finding of probable cause is an absolute bar to" a malicious prosecution claim brought by the party. *Holmes*, 511 F.3d at 682. As explained above, the undisputed facts show that Defendant Officers had probable cause to arrest Plaintiffs. There is also insufficient evidence to show that Defendant Officers had malice against Plaintiffs as to any of the charges brought against Plaintiffs or that there was a termination of the charges against Plaintiffs in a manner showing their innocence. *See Swick v. Liautaud*, 662 N.E.2d 1238, 1242 (Ill. 1996)(stating that for a malicious prosecution claim the plaintiff must show "the termination of the proceeding in favor of the plaintiff" and "the presence of malice"). Therefore, we grant Defendants' motion for summary judgment on the remaining malicious prosecution claims (Count V). In addition, since based on the above, the only remaining claims in this action are the respondeat superior claims, and there are no underlying claims to support respondeat superior liability, we grant Defendants' motion for summary judgment on the respondeat superior claims (Count VI).

VI. Qualified Immunity

We also note that, in addition to the above reasons for granting Defendants'

motion for summary judgment, Defendant Officers are entitled to qualified immunity for their conduct. A police officer is entitled to qualified immunity if he can "'demonstrate that he was performing a discretionary function and that a reasonable law enforcement officer would have believed that, at the time he acted, his actions were within the bounds of the law.'" *Jewett v. Anders*, 521 F.3d 818, 823 (7th Cir. 2008)(quoting *Belcher v. Norton,* 497 F.3d 742, 749 (7th Cir. 2007)). In the instant action, Defendant Officers were faced with an agitated crowd in the aftermath of a fight. Defendant Officers were outnumbered by the crowd. The crowd was not listening to orders to disperse and upon the attempted arrest of certain members of the crowd others in the crowd attempted to approach the officers and potentially interfere with the arrests. Under the circumstances in this case, Defendant Officers could have reasonably believed that their conduct was within the bounds of the law. 521 F.3d at 822 (recognizing that police officers are entitled to qualified immunity because they "often are called upon to make difficult decisions in high pressure and high risk situations"). Defendant Officers had a reasonable basis to conclude that their arrests of Plaintiffs were appropriate. In addition, Defendant Officers could reasonably have concluded that the force used by them to execute the arrests at the scene was appropriate under the law. Thus, Defendant Officers are entitled to qualified immunity in this action.

## VII. Motion to Strike

Plaintiffs have also filed a motion to strike. Plaintiffs contend that Defendants improperly filed an additional statement of facts along with the reply brief and Plaintiffs request that the court strike the additional facts. Plaintiffs also contend that Defendants, in their response to Plaintiffs' statements of additional facts inserted new facts and Plaintiffs ask the court to strike those additional facts. However, the new facts objected to by Plaintiffs are not material to a determination of Defendants' motion for summary judgment. Plaintiffs also ask to have certain responses by Defendants stricken and to have Plaintiffs' facts deemed to be admitted, but Plaintiffs have not shown that Defendants failed to comply with Local Rule 56.1. Therefore we deny Plaintiffs' motion to strike.

**CONCLUSION**

Based on the foregoing analysis, we grant Defendants' motion for summary judgment in its entirety. We also deny Plaintiffs' motion to strike.

_____
Samuel Der-Yeghiayan
United States District Court Judge

Dated:   June 24, 2008